UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANA MCDANIEL,<br><br>Defendant. | CRIMINAL NO. 25-CR-00047 |

**UNITED STATES' SENTENCING MEMORANDUM**

Dana McDaniel ("McDaniel") was a high-ranking D.C. government employee at the District of Columbia's Office of Neighborhood Safety and Engagement (ONSE), who abused her position of trust when she took a bribe – agreeing to use her official position to direct contracts and grants to CHS 1's businesses in exchange for cash. Indeed, at ONSE, McDaniel was tasked with the important job of overseeing and providing contracts and grants to companies who would act in the best interest of public safety. Instead, McDaniel agreed to sell those contracts and grants for thousands and thousands of dollars. McDaniel made clear that she was acting in her own self-interest, rather than in the best interest of the District and its residents. The harm was done the moment McDaniel entered into this illegal agreement; she violated the public's trust for her own personal greed and gain. For obvious reasons, a senior government official steering contracts related to District safety, not on the merits but for her own personal gain, is a staggering betrayal of duty. However, once caught, McDaniel subsequently sought the help of counsel and promptly took responsibility for her conduct through her pre-indictment plea. This spared the Government spending the resources to indict or try the case. For these reasons, and those discussed in more detail below, McDaniel should receive a sentence of 18-months imprisonment. This sentence is at the low-end of the applicable United States Sentencing Guidelines ("U.S.S.G." or "Sentencing

1

Guidelines") range, which if this Court adopts the Government's and Probation's calculation, is 18-24 months at offense level 15 and criminal history category I.

## I. PROCEDURAL BACKGROUND

On February 18, 2025, the Government filed a one-count Information charging McDaniel with one count of bribery, in violation of 18 USC § 201(b)(2). The Information also contained a forfeiture allegation. On March 28, 2025, McDaniel entered a guilty plea to the Information as part of a plea agreement with the United States. Sentencing has been set for August 6, 2025.

## II. FACTUAL BACKGROUND

### a. The Defendant

McDaniel is an experienced public official, having served in various roles in the District of Columbia Government since April 2012, when McDaniel began working in the Department of Youth Rehabilitation Services (DYRS) as a Youth Treatment Manager. McDaniel worked for DYRS until January 3, 2020, and then transferred to ONSE, where she became ONSE's Deputy Director. In that role, McDaniel supervised employees and managed agency programming and community-based services focused on providing resources and interventions for at-risk individuals in at-risk communities impacted by violence in Washington, D.C. and oversaw ONSE's Violence Intervention (VI) Initiative. McDaniel left ONSE in April 2023. In September 2023, McDaniel worked as the Deputy Director of Workforce for the Department of Employment Services (DOES).

As a D.C. Government employee, McDaniel was prohibited, pursuant to Section 1800.3 of the District of Columbia Personnel Manual – Employee Conduct, from: (1) soliciting or accepting any gift or other item of monetary value from any person or entity seeking official action for, doing business with or conducting activities regulated by employee's agency; (2) using or allowing the use of nonpublic government information to further a private interest; (3) using her public office

or position for private gain; and (4) giving preferential treatment to a private organization or individual. As such, agreeing to direct contracts and/or grants to CHS 1 and others known and unknown in exchange for monetary compensation were actions taken in violation of McDaniel's lawful and official duties.

    b. **ONSE**

ONSE is a D.C. Government agency created to address violence in Washington, D.C., and assist families dealing with the grief and trauma caused by such violence. In 2018, ONSE launched the VI Initiative, a collaborative community engagement strategy designed to support D.C. residents in reducing gun-related violence in their communities. ONSE contracted and partnered with community organizations to build partnerships with community members. In 2018, ONSE launched the VI Initiative, a collaborative community engagement strategy designed to support D.C. residents in reducing gun-related violence in their communities. ONSE contracted and partnered with community organizations to build partnerships with community members.

The VI Initiative engaged individuals as Violence Interrupters, who were outreach workers with an understanding of historical neighborhood conflicts. Violence Interrupters were responsible for: (1) building positive relationships with priority community members and developing partnerships with community organizations to implement violence intervention strategies; (2) serving as mentors to high-risk individuals; (3) identifying community and interpersonal conflicts with the potential to escalate to violence; (4) supporting the facilitation of ceasefires and mediations; and (5) responding to critical incidents to conduct information gathering, rumor control, and de-escalation. Violence Interrupters worked with individuals, families, and communities mostly affected by violence, to help extricate people from cycles of violence.

### c. CHS 1

CHS 1 was a resident of Maryland and operated several businesses that provided services to the D.C. Government, including Company 1 and Company 2. Company 1 represented itself as a community-based initiative to serve high-risk youths and adults throughout D.C. and Maryland. As part of ONSE's VI Initiative, Company 1 provided violence intervention services in Wards 1 and 4 of Washington, D.C. As part of the ONSE's VI Initiative, Company 2 provided violence intervention services in Ward 5 of Washington, D.C.

### d. Company 3

Company 3 was a nonprofit organization that provided family and mental health services to individuals in, among other places, Washington, D.C. In 2022, Company 3 became ONSE's administrative partner to provide quality assurance, compliance, and fiscal management for subgrantees under the VI Initiative. ONSE approved the subgrantees with whom Company 3 contracted to provide the VI services, including Company 1 and Company 2.

### e. The Criminal Conduct

Prior to September 2022, CHS 1 and McDaniel agreed that in exchange for money, McDaniel would use her official position as Deputy Director of ONSE to direct contracts and/or grants to CHS 1's associated businesses. In September 2022, Company 1 was awarded a grant as a subgrantee under Company 3 to provide VI services for Washington D.C., in Wards 1 and 4 from October 2022 to September 2023. The grant permitted the D.C. Government to pay Company 1 up to $1,700,000. The grant allowed Company 1 to be reimbursed for money spent on certain expenses permitted by the grant if the reimbursement requests were supported by documentation. McDaniel agreed to use her position to direct this award to Company 1.

In September 2022, Company 2 was awarded a grant as a subgrantee under Company 3 to provide VI services for Washington D.C., in Ward 5 from October 2022 to September 2023. The

grant permitted the D.C. Government to pay Company 2 up to $1,700,000. The grant allowed Company 2 to be reimbursed for money spent on certain expenses permitted by the grant if the reimbursement requests were supported by documentation. McDaniel agreed to use her position to direct this award to Company 2.

In September 2022, Company 1 was awarded a grant as a subgrantee under Company 3 to provide floating VI services for Washington D.C. from October 2022 through September 2023. The grant permitted the D.C. Government to pay Company 1 up to $1,700,000. The grant was cost reimbursable with funding based on reported allowable expenses supported by documentation. McDaniel agreed to use her position to direct this award to Company 1.

On August 6, 2024, CHS 1 and McDaniel met in CHS 1's car at a location in the southeast quadrant of Washington D.C. On this date, Ms. McDaniel was no longer employed or affiliated with ONSE. During that meeting, CHS 1 and McDaniel discussed the terms of their corrupt agreement and McDaniel confirmed that CHS 1 still owed her money in exchange for her agreeing to use her official position to direct contracts and grants to CHS 1's associated businesses. After confirming the terms of their agreement, CHS 1 paid and McDaniel accepted $10,000 in exchange for McDaniel's prior agreement to use her official position to direct contracts and grants to CHS 1's businesses.

## III.   THE APPLICABLE SENTENCING GUIDELINES

To determine an appropriate sentence, the Court must first accurately calculate each Defendant's advisory Sentencing Guidelines Range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Probation and the Government agree that McDaniel's advisory Sentencing Guidelines Calculation is:

| Guideline | Description | Offense Level |
|---|---|---|
| § 2C1.1(a)(1) | Base Offense Level | +14 |
| § 2C1.1(b)(2) | Value of Bribes | +2 |
| § 2C1.1(b)(3) | Offense involved a public official in a high-level decision-making or sensitive position | +4 |
| § 3E1.1(a) and (b) | Acceptance of Responsibility | -3 |
| § 4C1.1 | Adjustment for Zero-Point Offender | -2 |
| Total | | 15 |

In accordance with the above, McDaniel's Estimated Offense Level is 15. McDaniel's lack of criminal record places her in Criminal History Category I. The resulting advisory Guidelines range is 18-24 months.

### IV.     The +4 Enhancement Pursuant to § 2C1.1(b)(3) Applies and McDaniel's Estimated Offense Level is 15

As indicated in the plea agreement, the Defendant maintains that the +4 enhancement for a public official in a high-level decision-making or sensitive position does not apply pursuant to U.S.S.G § 2C1.1(b)(3). The Defendant is wrong. The PSR correctly applies a four-level enhancement because McDaniel was a public official holding a "high-level decision-making or sensitive position." *See* PSR at ¶ 26. (citing U.S.S.G § 2C1.1(b)(3)). The enhancement reflects the Sentencing Commission's conclusion that the "abuse of a position of great public trust, or the effort to corrupt a person holding such a position, is more dangerous than the corruption of, for example, a housing inspector or tax assessor." *United States v. Cruzado-Laureano*, 440 F.3d 44, 47 (1st Cir. 2006). The enhancement applies where the public official in question has "direct authority to make decisions" or "substantial influence over the decision-making process." USSG § 2C1.1 cmt. n.4(A).

Here, the enhancement applies because, at the time of her criminal offense, McDaniel was the Deputy Director of ONSE. In that role she had far-reaching oversight and power, as she was responsible for managing agency programming and community-based services, including the VI

6

program. As even McDaniel acknowledged in a voluntary interview with Federal Agents, her role was "a lot more hands on" at ONSE. Exhibit A at 5:50-6:07. McDaniel was in charge of, oversaw, and supported all aspects of the contracting and grant process at ONSE, to include helping draft the statements of work and the solicitation of bids, identifying panels to score and vote on the various bids for contracts and grants, interviewing candidates and potential grant awardees, and once awards were issued, ensuring that contract and grant awardees were compliant. *Id.* at 6:07-7:00; *see also id* at 7:18-7:50. Even when Company 3 took on some of those responsibilities, McDaniel supervised a team that worked with Company 3 to ensure there was proper administration of duties. *Id.* at 7:50 – 9:47. McDaniel acknowledged she was part of the "leadership team" that would meet monthly with Company 3's "leadership team." *Id.* at 9:47- 9:52. It is precisely because of this far-reaching oversight and power that CHS 1 bribed McDaniel to influence the grant process to ensure grants were awarded to his associated business. By the nature of her high-ranking position, McDaniel had substantial influence over the decision-making process and a +4 level adjustment is warranted pursuant to 2C1.1(b)(3). *See United States v. Johnson*, 605 F.3d 82, 83-84 (upholding +4 level adjustment pursuant to 2C1.1(b)(3) because defendant was a law enforcement officer who had the power to make decisions on behalf of the government).

> V.  **The Appropriate Sentence Considering the Factors Set Forth in Section 3553(a)**

To determine an appropriate sentence, after the Court accurately calculates each Defendant's advisory Guidelines range, it should consider the various factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to promote respect for the law, just punishment, and adequate deterrence. 18 U.S.C. § 3552(a). The United States submits that considering these factors, a sentence of 18-months imprisonment is appropriate

and not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2), which is 18-24 months at offense level 15 and criminal history category I. The United States also requests that the Court impose a forfeiture money judgment in the amount $10,000, which represents the minimum amount of proceeds McDaniel received in exchange for agreeing to use her position as Deputy Director of ONSE to direct contracts and grants to CHS 1's businesses.

    a. **Nature and Circumstances**

The nature and circumstance of the offense support a sentence of 18-months imprisonment. McDaniel, a high-ranking public official, violated the public trust and such conduct must be taken seriously. First, McDaniel violated the public trust by accepting a bribe as Deputy Director of ONSE, jeopardizing the integrity of important District services and the faith the public places in those services and government officials. Second, in 2024, when McDaniel met with CHS 1 to accept cash as part of their bribery agreement, McDaniel had left ONSE and was working for DOES, also in a Deputy Director position. During her meeting with CHS 1, McDaniel again agreed to direct business to CHS 1, this time using her official position at DOES. For example, McDaniel, referencing DOES, told CHS 1, "I need to get you in a pipeline over here." Exhibit A at 3:45. McDaniel went on to explain that DOES had money that others were having trouble spending, so not only was she helping them spend down the budget, but she had her own budget and was "knocking it out." *Id.* at 5:35-5:55. McDaniel went on to tell CHS 1 that to work with DOES, CHS 1 had to be on the eligible trade providers list, or the ETPL, and explained to CHS 1 the process of getting on the list, and the programs that were most desperate for service providers. *Id.* at 6:06-6:52. McDaniel subsequently said that once CHS 1 was on the list, that she would send business to CHS 1, even telling CHS 1, "If I gotta solicit you in, I will." *Id.* at 8:05-8:40. Then, to instruct CHS 1 on how to conceal their relationship and ensure others did not "get wind" of their corrupt

agreement, she instructed CHS 1, "to have a totally different name" and to "find a DBA [doing business as] to go under." *Id.* at 8:47-8:55. While discussing this, McDaniel confirmed she was not doing this for free, and that she expected something in return. Referencing the terms of their prior bribery agreement, McDaniel confirmed to CHS 1, "We can do the 3%." *Id.* at 8:43.

All of these actions emphasize how easily McDaniel was influenced to place her own interests above the interests of the public, who she was trusted to serve with integrity. Although there is no evidence that McDaniel directed the grants to CHS 1's businesses while she was Deputy Director of ONSE, this conduct must be taken seriously, especially because McDaniel was a public official who was in charge of supporting some of the District's most vulnerable citizens and intended to continue her criminal conduct at DOES. Thus, the nature and circumstances of the offense do not warrant a variance from the applicable guidelines and support an 18-month compliant sentence.

### b. History and Characteristics

Second, McDaniel's background does not support a lesser punishment. McDaniel's status as a high-ranking public official and her purposeful neglect of the responsibility and honesty that position mandates, requires the opposite. First, it is by the very fact of her position as Deputy Director of ONSE that McDaniel was able to commit this crime. She sold the influence afforded to her by the job she was trusted to carry out with integrity. That McDaniel worked in a position of public service and public trust does not weigh in favor leniency, but rather was plainly an abuse of a position of trust. McDaniel knew what she was doing was wrong, and she did it anyways for her own personal greed and grain. Thus, the nature and circumstances of the offense do not warrant a variance from the applicable guidelines and support an 18-month compliant sentence.

### c. The Need to Promote Respect for the Law and Provide Just Punishment and Adequate Deterrence

Third, McDaniel's sentence must also reflect the seriousness of the offense to promote rule of law and provide just punishment and adequate deterrence. These factors also support a sentence of 18-months imprisonment. Although McDaniel took immediate steps to remedy her wrongs, by seeking out counsel and accepting responsibility it cannot be neglected that McDaniel was a high-ranking government official, who was trusted to use District resources to serve the District's most at-risk communities. McDaniel was an experienced government official, who knew she owed a duty to the District. Instead, McDaniel violated that duty and placed her own greed and gain above everything else. McDaniel's willingness to sell her influence threatened the integrity of the District's important VI services. Conduct like this erodes the public trust in government. A sentence of 18-months imprisonment sends the messages that no one, including high-ranking government officials, is above the law.

## VI. FORFEITURE

The Government also requests the Court impose a forfeiture money judgment for $10,000, which represents the minimum proceeds McDaniel accepted as a bribe. *See* Attachment B, Proposed Order of Forfeiture. "Criminal forfeiture is not an independent substantive offense, nor is it even an element of an offense. It is instead 'an aspect of punishment imposed following conviction of a substantive criminal offense.'" *United States v. Day*, 416 F. Supp. 2d 79, 84 (D.D.C. 2006) (quoting *Libretti v. United States*, 516 U.S. 29, 39 (U.S. 1995)), aff'd in part on other grounds and rev'd in part on other grounds, 524 F.3d 1361 (D.C. Cir. 2008). Criminal forfeiture may take the form of: (1) an in personam money judgment against the defendant; (2) forfeiture of specific assets; and (3) forfeiture of "substitute assets" if the directly forfeitable assets are unavailable. *United States v. Zorrilla-Echevarria*, 671 F.3d 1, 5-6 (1st Cir. 2011) (citation

omitted). Since McDaniel has dissipated all of the proceeds she received from her scheme, the Government requests that the Court impose a forfeiture money judgment against McDaniel and to allow for forfeiture of any substitute assets to pay the money judgment in the event that the Defendant has any assets. *See* Attachment B.

Federal Rule of Criminal Procedure 32.2 governs criminal forfeitures. As required by Rule 32.2(a) of the Federal Rules of Criminal Procedure, the Government provided notice to McDaniel in the Information that it intended to seek a forfeiture money judgment against her as part of "any sentence in accordance with the applicable statute." Fed. R. Crim. P. 32.2(a). Specifically, the Information included a forfeiture allegation that provided notice to McDaniel that upon conviction of any of the offense alleged in Count One, the Government would seek criminal forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p). *See* Information at 3-4. The forfeiture allegation also stated that, "[t]he United States of America shall be entitled to forfeiture of substitute property." *Id.* at 4

## VII. RESTITUTION AND SPECIAL ASSESSMENT

The Government is not seeking restitution. However, in this case, a special assessment of $100 is mandatory. *See* 18 U.S.C. § 3013(a)(2)(A).

## VIII. FINE

In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); U.S.S.G. § 5E1.2(d). Given McDaniel's present financial status, and forfeiture obligation, it appears McDaniel does not have the ability to pay a fine, *see* PSR at ¶¶ 86-95, and the Government is not asking the Court to impose a fine.

## IX. CONCLUSION

McDaniel's conduct must not be taken lightly. Our government cannot function properly when the actions of government officials, and those in trusted high-ranking positions, violate the public trust by using their positions for their own personal gain. The Government asks the Court to impose a compliant guidelines sentence of 18-months imprisonment.

                Respectfully submitted,

                JEANINE FERRIS PIRRO
                United States Attorney

By:    /s/ *Rebecca G. Ross*
           Rebecca Ross (N.Y. BAR #5590666)
           Assistant United States Attorney
           601 D Street N.W.
           Washington, D.C. 20530
           Rebecca.Ross2@usdoj.gov
           (202) 815-8982

# EXHIBIT A

(Recording to be provided under separate cover)

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | Criminal No. 25-CR-00047 |
| | : | |
| | : | |
| **DANA MCDANIEL,** | : | |
| | : | |
| **Defendant.** | : | |

**PROPOSED CONSENT ORDER OF FORFEITURE**

**WHEREAS**, a written plea agreement was filed with this Court and signed by Defendant **DANA MCDANIEL**, and their counsel, James King, in which Defendant agreed to plead guilty to an Information, charging the Defendant with the offense of Bribery, in violation of 18, United States Code, Sections 201(b)(2), and the Defendant pleaded guilty to Count One.

**WHEREAS**, the Information gave notice that, upon conviction of the offense alleged in the Criminal Information, any property involved in this offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1)—and such forfeiture is mandatory;

**WHEREAS**, the Information gave notice that upon conviction, the United States will seek a forfeiture money judgment against the Defendant;

**WHEREAS**, the Defendant personally obtained at least $10,000 from Count One.

**WHEREAS**, pursuant to Rule 32.2(c)(1), an order of forfeiture for a personal money judgment requires no ancillary proceeding and is therefore final;

**WHEREAS**, Title 21, United States Code, Section 853(p) authorizes the forfeiture of substitute property;

**WHEREAS**, the Defendant admits that one or more conditions under Title 21, United

States Code, Section 853(p)(1) exist, namely that any property involved in Count One, or any property traceable to such property, that Defendant personally obtained, have been dissipated by the Defendant and cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court;

**WHEREAS**, upon entry of a forfeiture order, Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure authorizes the Attorney General or a designee to conduct any discovery the Court considers proper in identifying, locating, or disposing of property subject to forfeiture;

***NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED***:

1.  The Court finds that property the Defendant personally obtained $10,000 from the offense of conviction. A forfeiture money judgment in the amount of $10,000 is entered against the Defendant and in favor of the United States.

3.  The Court finds that the criminal earnings obtained by the Defendant, namely $10,000, have been dissipated by the Defendant and cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court;

4.  Pursuant to Rule 32.2(c)(1), because this order consists only of a personal money judgment, this is a final order of forfeiture.

5.  The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure.

6.  That pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure and the Defendant's consent, this Order of Forfeiture is now final as to the Defendant and shall be made part of the sentence and included in the judgment.

7.      The Attorney General or a designee, pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, is authorized to conduct any discovery to identify, locate, or dispose of property subject to this Order.

8.      The Clerk of the Court shall forward a certified copy of this Order to USADC.AFMLS2@usdoj.gov.

Dated this _____ day of _____, 2025.

                                                        HONORABLE RUDOLPH CONTRERAS
                                                        UNITED STATES DISTRICT JUDGE

WE ASK FOR THIS:

JEANINE FERRIS PIRRO
United States Attorney


By:    /s/ *Rebecca G. Ross*
        Rebecca Ross (N.Y. BAR #5590666)
        Assistant United States Attorney
        601 D Street N.W.
        Washington, D.C.  20530
        Rebecca.Ross2@usdoj.gov
        (202) 815-8982